JOHN REIS, PETITIONER-PROSECUTOR, v. BREEZE COR-
PORATIONS, INC, RESPONDENT-DEFENDANT.

Submitted May 5, 1942—Decided September 28, 1942.

Before Justices CASE, DONGES and COLIE.

For the prosecutor, *Elias G. Willman* and *Joseph Harrison.*

For the respondent, *Arthur T. Vanderbilt* and *G. Dixon
Speakman.*

The opinion of the court was delivered by

CASE, J.   A judgment for the employer and against the
workman entered in the Essex Common Pleas in a compen-

sation case affirming a determination of the Compensation Bureau is before us for review. The evidence is in sharp conflict on vital points, but this much is clear: The prosecutor, John Reis, was employed by the defendant, Breeze Corporations, Inc. His job was to dip metal shelves into a tank of paint, place them on trucks which hung from an overhead track and push them into an oven where the paint was dried and baked. After the shelving was baked it was passed to a fellow workman, one Pruchnicki, to be riveted. The painting, baking and riveting were done on a balcony within a large room or factory space occupied, under lease, by the employer in its business of manufacturing library shelves. The ground floor measured about 300 feet in length by 200 in width. The balcony occupied by the painting and riveting shop was one of two inside balconies, was about forty feet wide and was reached by a stairway from the ground floor. There was also a small balcony, where the accident occurred, measuring about five by eighteen feet on the outer side of the wall from the paint shop. There was an opening in the wall not large enough for an average-size man to pass through without stooping, and the opening was closed by a door which the employer undertook to keep padlocked from the inside—unsuccessfully because the hasp was repeatedly pried off. Neither Reis nor his fellow workman, Pruchnicki, had duties on that outside balcony; but both of them were there at about 7:30 in the morning of October 6th, 1939. Their shift had begun at one o'clock in the morning and they were still within their hours of labor. Both men fell therefrom dislodging a unit of the rail, Pruchnicki in Reis' embrace, receiving injuries for which Reis seeks to recover in this, and Pruchnicki in another, action.

Reis' story is that he became heated from his work, went to the outer balcony, as it is said he and others frequently did, to get a breath of air, leaned against the balcony railing, lost his balance and, grabbing hold of Pruchnicki to whom he was talking, fell. There is testimony from others to like effect. But the Deputy Commissioner in his determination of facts and rule for judgment bluntly complains of

the attitude and demeanor of the petitioner and several of his witnesses and expresses doubt as to their credibility. A trial court has the opportunity, which an appellate tribunal has not, to observe the appearance and demeanor of the witnesses and a certification from below in that respect is entitled to consideration, *Gilbert* v. *Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533, 538, particularly when the transcript of the testimony shows ground for suspicion.

Even in the petitioner's proofs there is support for a finding that the visits by the men to the outside balcony were surreptitious and against the known instructions of the employer. Martin Kwaitkowski, a fellow workman of and a witness for the petitioner, testified on direct examination: "When the oven was on schedule and I finished my shelves, I took a sneak out to get a little fresh air. * * * That was the reason Mr. Holland laid me off, because he found out our trick; * * *. They didn't want it worked that way, they wanted mass production. * * * Of course I did sneak out, I was being paid for that hour, so really I did sneak; it is not a lie; it is the truth. I did sneak out because if the boss saw me loafing he would say something right away, but he wouldn't say anything every time because I was away from the machine, that machine was still going, that was an automatic riveter, but if he saw me loafing he would catch on my trick. But I am a working man I do the easiest way I can; if I can keep up with the production that is my luck." Again, it is difficult to reconcile the manner of the accident, as related by Reis, with the undisputed facts. Reis says that he was standing with his back to the railing talking with Pruchnicki, that he leaned backward against the railing, lost his balance, toppled over backwards and, as he felt himself going, grabbed hold of Pruchnicki and that the two went down together; but the railing was after the fashion of a gate which fitted down in a socket and could only be removed by an upward thrust.

Factually, Deputy Commissioner Wegner found in the Bureau and Judge Flannagan found on the appeal to the Pleas that the outside balcony was not under the control of

the employer, that Reis and his fellow workmen had been forbidden by the employer to use the balcony, that the use thereof at the time of the accident was in violation of orders which limited the sphere of the petitioner's employment and that such prohibition was grounded in sound business reasons. It was said in *Pearson* v. *Armstrong Cork Co.*, 6 *N. J. Mis. R.* 976, that "Where two independent and distinct tribunals such as these [viz., the Workmen's Compensation Bureau and the Court of Common Pleas] have examined the facts and heard the testimony we do not think that a conclusion so reached should be lightly disturbed by this court upon a mere inspection of the written word, where there is ample support in the testimony for the conclusion so reached." Practically the same language was used in *Mountain Ice Co.* v. *Durkin*, 6 *Id.* 1111, affirmed by the Court of Errors and Appeals on the opinion below, 105 *N. J. L.* 636; followed in *Bollman* v. *McGovern*, 8 *N. J. Mis. R.* 454; *Berman* v. *Levenstein*, 9 *Id.* 378; *affirmed*, 121 *N. J. L.* 139; *Yoshida* v. *Nichols*, 12 *N. J. Mis. R.* 197; *Faley* v. *Trenton Malleable Iron Co.*, 13 *Id.* 286; *affirmed*, 115 *N. J. L.* 579; *Voight* v. *McEwan Bros.*, 13 *N. J. Mis. R.* 587; affirmed on the opinion below, 116 *N. J. L.* 218; *Matthews Construction Co.* v. *Ranallo*, 13 *N. J. Mis. R.* 878; affirmed on the opinion below, 117 *N. J. L.* 148; *McMillin* v. *Calco Chemical Co.*, 15 *N. J. Mis. R.* 68; *Mong* v. *Samuel Dolinsky & Co.*, 119 *N. J. L.* 547. In *Richmond* v. *Scheidell*, 8 *N. J. Mis. R.* 468, the rule was followed in the light of chapter 229, *Pamph. L.* 1921, amending paragraph 19 of the Workmen's Compensation Act (now *R. S.* 34:15-66), and section 11 of the *Certiorari* Act, 1 *Comp. Stat.*, *p.* 405 (now *R. S.* 2:81-8). The Court of Errors and Appeals, in *Berlinger* v. *Medal Silk Co.* (1934), 113 *N. J. L.* 476, said: "Our reports are replete with decisions which clearly state and restate the law applicable in such cases. The following are a few of the many typical cases: * * *" (quoting *verbatim* the rule in *Pearson* v. *Armstrong Cork Co.*, *supra*, and also the restatement in Mountain Ice Co. *v.* Durkin). It is, as of course it must me, our independent examination

and appraisal of the testimony which moves us to our conclusion, *Rotino* v. *J. P. Scanlon, Inc.*, 126 *Id.* 19; *Stetser* v. *American Stores Co.*, 124 *Id.* 228; *Beerman* v. *Public Service Co-ordinated Transport*, 123 *Id.* 479; *Calicchio* v. *Jersey City Stock Yards Co.*, 125 *Id.* 112, and when, in our opinion, justice requires a reversal we do not hesitate to accomplish that result against the rulings of both the lower tribunals. *Grotsky* v. *Charles Grotsky, Inc.*, 121 *Id.* 461; *affirmed*, 124 *Id.* 572; *Selig* v. *Jersey City*, 123 *Id.* 92; *Bruno* v. *Turner & Co., Inc.*, 116 *Id.* 143; *Lazzio* v. *Primo Silk Co.*, 114 *Id.* 450. Nevertheless, the concurrence of findings by the Bureau and the Pleas has, according to our understanding, the potential bearing accredited to it in the long list of decisions enumerated above, *DeSantis* v. *Turner Construction Co.*, 120 *Id.* 590; *Anderson* v. *Federal Shipbuilding and Dry Dock Co.*, 118 *Id.* 55; and that bearing is perhaps best described in *Anderson* v. *Federal Shipbuilding and Dry Dock Co., supra* (cited in support in the *Rotino, Stetser, Beerman* and *Calicchio* cases, *supra*), as follows:

"The rule may be considered as now settled that in compensation cases the Supreme Court can and will consider weight of evidence even when the two lower tribunals are in accord on findings of fact, though their conclusions, to use the phrase repeated in our reports, 'will not be lightly disturbed' where there is evidence to support them. Naturally this court will more freely intervene in a fact case where the Pleas and the bureau are in disagreement on factual question."

It appears to us that if it had been the intention of the Court of Errors and Appeals to overrule a principle so thoroughly established, there would have been a more direct reference to the decisions and a more specific pronouncement.

We have made an independent examination and appraisal of the testimony and our conclusion is grounded therein. We think that the above-mentioned findings by the two lower tribunals were well supported and that, on the showing of the transcript, they ought not be disturbed. We find that Reis and his fellow workmen—Reis specifically—had been

ordered not to go on the outside balcony and that there were adequate reasons for the employer in the operation of its business, to issue such an order—the need to keep the opening closed against the blowing of lint from a neighboring laundry with respect to pollution of the kettles of paint and the marring of the freshly painted shelves, doubt as to the right of the employer to exercise control over the balcony and the desirability of having the men, during their hours of duty, under observation. It does not appear that there were not other places, both convenient and permissible, where relief could have been had from the oppressive physical conditions which Reis says existed.

It is urged on behalf of the prosecutor that the conditions under which he worked were oppressive; that he was entitled to administer to his personal comfort by seeking fresh air; that the outside balcony was a place where there was fresh air, wherefore he had the right to go there and the accident that came to him there arose out of and in the course of his employment; and, further, that if there was another and more appropriate place of refreshment the burden of proving that fact was on the defendant. Upon the proposition that he had the right to administer to his personal needs, even off the premises of the employer, *Zabriskie* v. *Erie Railroad Co.*, 86 *N. J. L.* 266, and *Jasnig* v. *Winter*, 115 *Id.* 320; *affirmed*, 116 *Id.* 181, are cited; and upon the proposition that the burden of affirmative proof was upon the employer, *Atchison* v. *Colgate & Co.*, 3 *N. J. Mis. R.* 451; *affirmed*, 102 *N. J. L.* 425, and *Pierce* v. *Jersey Central Power and Light Co.*, 127 *Id.* 71.

For the purposes of the argument, we may assume that the immediate *locus* of prosecutor's work was poorly ventilated, and that an occasional respite was desirable and proper; but the legal significance of this assumption must be measured in the terms of the factual findings and omissions, *supra*. The question is whether a worker, experiencing a reasonable desire for a breathing spell, may go to a forbidden place not within the control of his employer and being there injured hold the employer responsible as for an accident arising out of and in the course of his employment, without showing that

there was no other adequate and reasonably convenient place either on the premises or against which there was no injunction.

In *Zabriskie* v. *Erie Railroad Co., supra,* it was an established fact that there was no toilet in·the building where the workman was employed and that it was necessary for him to go somewhere to satisfy a call of nature, whereupon he went across the street where, according to the evidence, was the only available convenience. It is clear (page 269) that the Court of Errors and Appeals thought it an important factor in the proof that there was a lack of proper facilities at the place of employment. In *Jasnig* v. *Winter, supra,* the employee, a seamstress, was obliged by her employment to stay in the employer's house over night. During the night she had occasion to visit the bathroom of the house to respond to a call of nature and on the way she was injured. In *Atchison* v. *Colgate & Co., supra,* the claim was for the death of a laborer who, while wheeling a hand truck down a gang plank in the performance of his work, fell a distance of four feet; the proof sustained a finding that the fall produced paresis from which the workman ultimately died; the employer contended that the paresis had existed prior to and without relation to the employment, and the court held that the burden of proving the fact assumed in the contention was on the employer. So, too, in *Pierce* v. *Jersey Central Power and Light Co., supra,* the claimant produced medical testimony which, in the opinion of the court, established that death occurred from carbon monoxide poisoning, and the employer, setting up the contrary theory that death was from coronary thrombosis, failed to carry the burden, which the court held was upon it, of proving its contention. We find nothing in any of these decisions pertinent to the question as put in the last preceding paragraph.

The decisions in this state have from the beginning of the Workmen's Compensation Law recognized a distinction, in the legal effect, between a disobedience by the workman with respect to the way in which work should be done and disobedience by a workman with respect to going outside the

sphere of his employment. Mere disobedience of instructions relating to conduct within the sphere of employment, it has been held, does not necessarily preclude recovery of compensation. *Kolaszynski* v. *Klie,* 91 *N. J. L.* 37; *Bubis* v. *Flockhardt Foundry Co.,* 119 *Id.* 136; *affirmed,* 120 *Id.* 177. But disobedience of specific instructions limiting the sphere of the *locus* of the employment has been held to take a resulting injury out of the application of the statute, *Reimers* v. *Proctor Publishing Co.,* 85 *N. J. L.* 441, as it does not then arise out of and in the course of the employment, *Smith* v. *Corson,* 87 *Id.* 118. See, also, *Cassell* v. *Mueller,* 99 *Id.* 270. Mr. Justice Swayze, who wrote the opinion for the Supreme Court in both the Reimers and the Kolaszynski cases, himself drew the distinction in the latter case. The distinction was again drawn by Mr. Justice Perskie in *Dubit* v. *Sheffield Farms Co., Inc.,* 118 *Id.* 411, 417.

There was no emergency. Prosecutor was not in dire straits. He was "sweating" and went out to "just get a breath of air. * * * I was getting a breath because I was sweating." The ventilators immediately over the paint shop were closed to keep out foreign particles and this prevented full circulation of air at that spot. But the ventilators over the general work floor were open. There was a lavatory to which workmen resorted. There was an exit by door from the main floor almost immediately under the outside balcony. What other facilities there were does not appear.

The burden of proving that the accident arose out of and in the course of the employment was on the prosecutor, *Gilbert* v. *Gilbert Machine Works, Inc., supra; Reimers* v. *Proctor Publishing Co., supra,* and this, in our opinion, put upon him the burden of proving that there was not a suitable refuge other than the one where he was injured and where he was forbidden to go. Without that proof the accident was not shown to have arisen out of and in the course of the employment. Whether, if that proof had been put in, the burden would have been fully met is not before us for decision.

The judgment below will be affirmed, with costs.