43 N.J. Super. 269 (1957)
128 A.2d 521
LEONARD TLUZEK, PETITIONER-APPELLANT,
v.
FEDERAL LEATHER COMPANY, RESPONDENT-APPELLEE.
Superior Court of New Jersey, Hudson County Court, Law Division.
Decided January 4, 1957.
*271 Mr. David Roskein, attorney for petitioner-appellant.
Mr. Edward B. Meredith, attorney for respondent-appellee.
DREWEN, J.C.C.
Petitioner-appellant suffered a partial crushing of his left hand as the result of its being caught in a pressure roller attended by him at the time as an employee in the plant of respondent-appellee. The accident occurred August 24, 1955. Respondent paid all hospital and medical expenses, and temporary compensation was paid until December 5, 1955, when petitioner returned to work. During the period covered by temporary compensation payments and before the return to work, the formal claim petition was filed on November 15, 1955. Following the filing of the claim petition the normal procedural steps were taken toward bringing the matter to issue. Additionally, informal hearing was listed and continued, medical reports were received, pretrial conference was listed and continued, all of which brought events to February 17, 1956, the continued date of a pretrial conference.
On February 23, 1956 respondent gave notice of the amendment of its answer to claim-petition so as to admit 40% of permanent disability in the left hand. On the same date (February 23, 1956) respondent delivered its check for payment to petitioner of the amount then due on the basis of the disability as thus admitted. On April 6, 1956 the *272 first formal hearing was listed, the same being adjourned because of the illness of counsel. On April 20, 1956, and following extensive argument, the deputy director allowed the amendment of the answer to claim-petition and ruled that the tender of 40% of permanent disability in the left hand had been made within a reasonable time and in accordance with the statute (infra). N.J.S.A. 34:15-64 of the Workmen's Compensation Act provides:
"* * * When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid. * * *"
The first question presented by the appeal is whether the 40% tender was made "at a reasonable time, prior to any hearing" within the statutory intent and meaning. The period material to the decision of this question is that beginning February 23, 1956, when the notice of amendment was given and the first payment made pursuant to tender, and ending April 6, 1956, when the first formal hearing was listed, a period of 43 days.
From page 1 to page 70 of the transcript there runs a somewhat tangled mixture of argument, colloquy, contention and agreement bearing on the particular question now dealt with, and which is the only record brought here on the appeal that has relation to the question. To be gleaned from it is a relevant schedule or calendar of stipulated events and dates, and upon which the briefs of both counsel are based. I have examined pages 1 to 70 of the transcript with care and have considered with like attention all dates and events that may be regarded in the particular stated as being in agreement between the parties. I find nothing that warrants any view of the matter but that the "hearing" in the statutory sense occurred upon the listing thereof for April 6, 1956. Nor do I find any basis for the conclusion that there was any date, condition or occurrence earlier than February 25, 1956 (when respondent gave notice of the amendment and *273 made the initial payment on account of the admitted disability), to indicate that the tender should by legal requirement have been made before it was made. What does the statute mean by "any hearing"? Counsel for petitioner is at great pains to show that the earlier procedural meetings for pretrial or informal hearing must be taken, in one instance or another, as presenting a hearing in the statutory sense. It is my opinion that the very nature of a pretrial conference, as well as of an informal hearing, in the design and scope thereof, prohibits any such conclusion as that which counsel for petitioner urges. "Any hearing," as I understand it, must be taken to mean any final hearing. From the contrary view it would follow that tender might be made exigent and called for while the issue of disability was still inconclusive. Clarity and definiteness for all concerned is better served by the view that "hearing" means a contested session, one that in itself is final in the sense that it is determinative of the issues.
The term "hearing" as it appears in the statute does not, in my opinion, refer to any preliminary or indeterminate meeting or conference of the parties for the purpose of facilitating the arrival at a preliminary result or a result attainable without trial. In keeping with this statement, I believe to be the pronouncements of our appellate courts. As stated by Justice Heher in Handlon v. Town of Belleville, 4 N.J. 99, 105 (1950):
"The requirement of a `hearing' has reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts and the issue determined uninfluenced by extraneous considerations which might not be exceptionable in other fields involving purely executive action."
See also Weaver v. N.J. Dept. of Civil Service, 6 N.J. 553 (1951); Borgia v. Board of Review, Div. of Employment Security, 21 N.J. Super. 462 (App. Div. 1952). In Abbotts Dairies v. Armstrong, 14 N.J. 319, 332 (1954), Justice Jacobs stated:
"* * * an essential of the fair hearing contemplated by the statutory provision is that the evidence or material upon which the *274 Director may rely to support his order be appropriately disclosed and made part of the hearing record, with ample opportunity of refutation afforded to the interested parties."
The next question is, what in the statutory context is a "reasonable time"? The period in issue, as already stated, is one of 43 days, from February 23, 1956 to April 6, 1956. The import of the argument made for petitioner appears to be that the period of reasonable time must be taken as having begun on the earliest possible date on which tender would have been warranted, that is, in the light of hindsight. The proviso "reasonable time prior to any hearing" is not to be cramped within straits of that kind. Reasonableness in this regard, as generally, is to be viewed in the light of the clearly established facts. It is a circumstantial and latitudinous concept. Nor does the phrase "reasonable time prior to any hearing" mean a reasonable time prior to the earliest hearing, assuming there was such prior hearing in the facts before us.
A case in point is Seitz v. Singer Mfg. Co., 36 N.J. Super. 546 (App. Div. 1955), which held the tender there not to have been made within a reasonable time prior to the hearing. But I think it abundantly clear from factual contrast that the cited case must be taken as favoring approval of the tender made in the situation before us. In the Seitz case, for one thing, there was no notice of the amendment, and respondent there waited until two working days prior to the second hearing before making its offer, although it had been put on notice three months prior thereto as to the extent of the disability. The Seitz case has exclusive and definite predication on its own facts as just stated. The court said, at p. 551:
"The aforesaid R.S. 34:15-64, as amended, is for the protection of attorneys and their fee. Since no notice was given to counsel and the offer made only two working days before the hearing, this court is not of the opinion that the statutory requisite of `a reasonable time' had been complied with. Were we to hold otherwise, such a belated offer would still circumvent the amended statute and the attorneys would be back where they were before the amendment was enacted."
*275 The remaining question has to do with the deputy director's finding of the degree of disability. The details of the injury and the resulting impairments are accurately set forth in the conclusions of the deputy director as they appear in the transcript. The finding was that petitioner "as a physiological unit from an orthopedic standpoint deviates from the normal to the extent of sixty (60%) per cent of his left hand." As already shown, respondent had previously admitted, and initiated payments on, a total permanent disability in the hand of 40%. On the neuro-psychiatric side, the deputy director found and determined an additional permanent disability of 4% of total.
Dr. Visconti, for petitioner, testified to an estimated disability in the left hand of 80%. He admitted he had not made an examination of the claimant since February 10, 1956 (date of testimony May 14, 1956). He stated he could not tell whether there had been any change since the earlier date without further examination.
Dr. Ruoff, for respondent, stated in full detail the findings of his examination and estimated disability at 40% of the left hand. As to the neurological aspect of the claim, Dr. Siegal, petitioner's expert, gave details of his findings and concluded that "the patient suffered from anxiety hysteria, neurosis of a moderate degree." He found 12 1/2% of total (exclusive of the orthopedic disability of the hand itself). He had made no examination later than the preceding February 11 and stated he was in no position to tell whether or not there had been any further improvement in claimant's condition since the examination, due to claimant's continually working. Dr. Kinley, the neurologist called by respondent, found "no objective signs of organic pathology of the central nervous system which might be attributed to the reported accident." He found no disability beyond the orthopedic. There were other estimates by Dr. Riggs and Dr. Willner read into the record, reflecting earlier examinations, these being more or less tentative in character.
Petitioner's argument under this head stresses the complaint that the degree of disability found falls between *276 the testimonial extremes of the opposing experts. Counsel in his brief submits that, 
"The temptation in settlement or adjudication of cases involving only the question of amount of permanent disability is too often to `split the difference' between the estimates of petitioner's doctors and those of the respondent. Such a disposition, it is said, has its advantages e.g., disposition without severe damage to either side; expedition of the back-log of claims; it could even result in doing away with proponents and opponents and having a tabulator machine render decision after being fed the doctors estimates, but does it render justice to the injured individual?"
In spite of all this, a showing that the resultant finding is such as to expose itself to the charge of "splitting the difference" is certainly not an argument that in itself establishes error in the finding arrived at. For one thing it depends, and in important measure, on how the trier adjudged the testimony of the experts in view of what he was able to observe not only in them but in the petitioner himself. A median estimate is one thing, an obviously erroneous estimate is quite another. It must not be forgotten that what we are dealing with in matters of this kind is at best not precision but approximation. As already indicated, there is involved here the familiar principle according to which deference is to be given on a trial record review to the opportunities of the hearer to see and observe all witnesses before him. As long as this principle is with us, recognition will be its due. Needless to say, it must have its exceptions in particular instances, as where error or oversight or otherwise faulty estimate is apparent on the record or fairly to be gleaned therefrom. But I find nothing in the instant case that qualifies it in any way for such exceptional treatment. DePasquale v. Contalvi, 126 N.J.L. 136, 138 (Sup. Ct. 1941); Magnuson v. Peterson, Inc., 132 N.J.L. 243, 245-6 (Sup. Ct. 1944); Reis v. Breeze Corporation, 129 N.J.L. 138, 140 (Sup. Ct. 1942); and see Gilbert v. Gilbert Machine Works, 122 N.J.L. 533, 538 (Sup. Ct. 1939).
My findings are in accordance with those of the deputy director.