47 N.J. Super. 425 (1957)
136 A.2d 31
ROBERT C. MOORE, PLAINTIFF-APPELLANT,
v.
MAGOR CAR CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1957.
Decided November 14, 1957.
*427 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Herman M. Wilson argued the cause for appellant.
Mr. Isidor Kalisch argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Petitioner appeals from a County Court judgment affirming an award of counsel fees by the Division of Workmen's Compensation.
It is undisputed that petitioner suffered a total loss of vision in his right eye as a result of an accident arising out of and in the course of his employment with respondent. The deputy director made an award of 100% permanent disability for that loss (150 weeks at $30 a week), and also 5% of total for psycho-neurosis (27 1/2 weeks at the same rate). He allowed an attorney's fee of $160, based on only the $825 awarded for the psycho-neurosis. In awarding this limited counsel fee the deputy director relied on N.J.S.A. 34:15-64, which reads in part:
"* * * When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid. * * *"
*428 The deputy director as well as the County Court judge held that respondent employer had complied with the statute so as to preclude an attorney's fee for that part of the judgment representing compensation for loss of vision.
Petitioner was injured October 10, 1955. Respondent had actual notice of the accident the same day and proceeded to furnish all necessary medical services. Its eye specialist, Dr. Lisman, performed an operation for retinal detachment of the right eye on October 25, 1955. Under date of December 16, 1955 he reported to respondent that petitioner had "100% schedule loss of vision and the prognosis for the return of vision is very poor." He stated he had advised petitioner to return to work, but to remain under the observation of his local doctor. Respondent paid 12 weeks' temporary disability, covering the period from the date of injury through January 4, 1956, when petitioner returned to work.
Petitioner then consulted counsel, who filed a claim petition on February 10, 1956. It was served on respondent March 14, 1956. Respondent had meanwhile received a report from its examining ophthalmologist, Dr. Plain, dated February 14, 1956 and fixing loss of vision in the right eye at 100%. Counsel for petitioner had apparently also arranged for an examination, for he received a report from his own examining physician dated February 18, 1956.
On March 26, 1956 respondent filed its answer, sworn to March 14, the same day the petition was served. The answer admitted a work-connected injury, knowledge thereof, and that there had been "100% loss of right eye"; further, that medical aid had been furnished and temporary disability paid for 12 weeks, but no permanent disability. On March 21, 1956 defendant mailed petitioner its check for $360, without any accompanying letter of explanation or notation, except for "Wages to 3-28-56," typed on the face of the check. (At the hearing held in September 1956, counsel for respondent explained that this check was a first payment on account of permanent disability, covering the period of *429 12 weeks from January 5 to March 28, 1956, inclusive.) Respondent has continued to make regular payments of $30 a week since. One other fact should be noted: the pretrial, originally set for June 8 and postponed to June 22, was finally held on July 13, 1956. At that time respondent for the first time expressly offered to pay 100% permanent disability for loss of the right eye.
In the light of these facts, the deputy director found that respondent had made a timely offer, tender and payment in good faith, as required by the statute. In concluding that it had acted "at a reasonable time," as required by the statute, he stated: "the test period can begin only when the attorney enters into the picture, approximately the time that the petition was filed, and the end of that period where the good faith applies is a reasonable period." The County Court judge agreed that respondent had met the statutory requirement; he found it had offered compensation at a reasonable time prior to the hearing and paid the amount then due in good faith, so that both the employer and employee were relieved of liability to petitioner's attorney for any counsel fee based on the loss of vision.
Respondent contends that its answer admitting 100% disability in the right eye, its check of March 21, 1956, and the offer it made at the pretrial conference, amounted to a good faith offer and tender of compensation, within a reasonable time before hearing, so that petitioner's attorney was entitled to nothing more than he received  a counsel fee on the 5% allowed for the psycho-neurosis. On the other hand, petitioner claims that (1) neither respondent's answer to the claim petition nor its check of March 21 constituted an unconditional offer or tender within the contemplation of the statute; (2) the asserted offer was not made within a reasonable time; and (3) it was not made in good faith.
The present form of the statute, N.J.S.A. 34:15-64, quoted above, was the result of an amendment effected by L. 1952, c. 318, § 1. Prior to that time an offer or payment *430 of compensation by a respondent at any time before hearing  even a single day  would have deprived a petitioner's attorney of any fee based on the amount of the offer, regardless of the services he had rendered. Haberberger v. Myer, 4 N.J. 116, 124 (1950). The 1952 amendment changed the law so that in order to reduce or eliminate the attorney's fee compensation had to be offered and the amount then due tendered in good faith or paid, and this "at a reasonable time, prior to any hearing."
The statute, as amended, was considered by this court in Davala v. American Bridge Co., 36 N.J. Super. 274 (1955), where we dealt with the requirement of "tender in good faith." We there observed that the obvious purpose of the 1952 amendment was "to afford greater protection to attorneys representing compensation claimants who may have invested substantial time and effort" prior to the making of an offer by a respondent. "Tender in good faith," we said, suggests some degree of objectivity in the making of a proposal  something which did not leave the attorney to the mercy of later interpretations of mere conversations  and we held that the employer's offer of compensation had not been accompanied by such a tender. We indicated that the mailing of a check upon the filing of a claim petition would have constituted a sufficient tender in the circumstances.
The bare acknowledgment of 100% of total disability in the answer did not amount to an offer. An offer should never have to be inferred under N.J.S.A. 34:15-64. And the check, even when considered together with the answer, did not clearly spell out a tender of payment on account of the full 150 weeks' compensation respondent well knew it was obliged to pay for an injury of this type, total in nature. It was not until the pretrial conference in July 1956 that respondent made a plain, unmistakable offer and tender. In our view, there was no reason for this delay. With the reports that were in hand, respondent should have come forward and tendered payment in accordance with the statutory schedule for the 100% loss of vision before petitioner retained an attorney and filed his claim petition.
*431 Respondent failed to act "at a reasonable time." That statutory requirement was considered in two cases subsequent to Davala: Seitz v. Singer Mfg. Co., 36 N.J. Super. 546 (App. Div. 1955), and Tluzek v. Federal Leather Co., 43 N.J. Super. 269 (Cty. Ct. 1957).
The petitioner in Seitz had been injured in August 1952; the claim petition was filed March 4, 1954 and the answer on April 6, 1954. On June 24 the Workmen's Compensation Division gave notice that the hearing would be held July 19. The respondent had since April or May known through its treating doctors that petitioner was totally disabled. On July 12, and after it had received the hearing notice, it filed its amended answer admitting 80% permanent disability. It was not until July 15, only four days before the hearing, that it tendered petitioner a check representing the first week of permanent disability compensation. The Appellate Division, after noting that the statute had been amended for the protection of attorneys and their fees, held that respondent's belated check could not be "deemed a bona fide offer to settle the matter within a reasonable time."
In Tluzek the injury occurred August 24, 1955. Temporary compensation was paid to November 5, 1955, when petitioner returned to work. He filed his claim petition November 15, 1955, and respondent answered. Following a pretrial conference, respondent on February 23, 1956 gave notice of an amendment to its answer so as to admit 40% of permanent disability. On the same date it delivered its check to petitioner in the amount then due on the basis of the disability thus admitted. The final hearing, scheduled for April 6, 1956, was held on April 20 following, at which time the deputy director allowed the amendment to the answer and ruled that the tender of 40% of permanent disability had been made within a reasonable time and in accordance with the statute. On appeal the County Court held that the words "prior to any hearing" in the statute referred to the final hearing, and it concluded that the tender had been made within a reasonable time. The court *432 measured "reasonable time" as the period from February 23, 1956, when respondent gave notice of the amendment to its answer, to April 6, 1956, the date originally fixed for hearing  43 days. "Reasonableness," said the court, "is to be viewed in the light of the clearly established facts. It is a circumstantial and latitudinous concept." The Seitz case was distinguished on its facts. It is important to note that in the course of its decision the court in Tluzek said:
"* * * Nor do I find any basis for the conclusion that there was any date, condition or occurrence earlier than February 25, 1956 (when respondent gave notice of the amendment and made the initial payment on account of the admitted liability), to indicate that the tender should by legal requirement have been made before it was made. * * *" (43 N.J. Super. at pages 272-273)
We have already noted that in the instant case the deputy director interpreted the statute as indicating that the period for measuring "reasonable time" would begin with the filing of the claim petition and extend until a reasonable time before the hearing, during which period respondent had a right to make the offer and tender or payment. In view of what was said by our highest court in Haberberger v. Myer and by us in Davala v. American Bridge Co. and Seitz v. Singer Mfg. Co., we do not agree that the date of filing the claim petition may, of itself, be selected as the beginning date of the test period of "reasonable time."
Further, the insertion of a comma between the phrases "at a reasonable time" and "prior to any hearing" in the 1952 amendment to N.J.S.A. 34:15-64 leads us to conclude that the Legislature did not intend that the only gauge should be whether the payment was made at a reasonable time with reference solely to the space of time between tender or payment and the hearing  as seems to have been the reasoning of the County Court in the Tluzek case. While the hearing date may be the absolute terminal, it would seem that "reasonable time" under the statute is a time reasonable in light of all the circumstances  not only the *433 date of filing of the claim petition and the date of the hearing, but also respondent's knowledge of the nature and extent of petitioner's disability (cf. Seitz v. Singer Mfg. Co., above, 36 N.J. Super. at page 550, where the court made particular mention of the date on which respondent was aware of petitioner's total disability), and also  and especially  the likelihood of retainer of an attorney by the petitioner, the nature and extent of the legal services rendered, and whether such services may have been occasioned by respondent's failure to make a timely offer and tender or payment.
We recall that the court in Haberberger, 4 N.J. at page 124, observed that under the statute as it stood in 1950 the employer could refrain from making an offer of settlement until immediately prior to hearing "and thus diminish or entirely defeat the award of fees to a petitioner's attorney, despite the rendition of services in preparation of his client's case for hearing." (Italics ours.) And we have already referred to what we said in Davala v. American Bridge Co., above, 36 N.J. Super. at page 279, about the obvious purpose of the 1952 amendment being "to afford greater protection to attorneys representing compensation claimants who may have invested substantial time and effort in a matter prior to the making of an offer by a respondent * * *." (Italics ours.) And see 2 Larson, Workman's Compensation Law, § 8317, p. 350 (1952), and 17 N.A.C.C.A.L. J. 114 (1956).
Applying the factors mentioned in the next to preceding paragraph to the present case, we are of the opinion that respondent did not act within a reasonable time. It is uncontroverted that it had notice of petitioner's total disability on December 16, 1955  more than three months before it mailed him its check of $360  and this by reason of the report of its eye specialist, Dr. Lisman. It also had the report of its examining ophthalmologist, Dr. Plain, under date of February 14, 1956. Although fully informed of the fact that petitioner had suffered a total loss of vision in his right eye, respondent nonetheless chose to stand silently by, *434 apparently satisfied with the 12 weeks' temporary disability it had paid him up to the date of his return to work. Petitioner then felt constrained to consult an attorney, who presumably explored the nature and validity of his client's claim and then proceeded to have him examined (the record, it is to be remembered, refers to the February 18, 1956 report of petitioner's ophthalmologist) and to file and serve the claim petition. Respondent became alive to its responsibility only when it was served on March 14, 1956. It then prepared its answer admitting the 100% eye disability. The check of March 21 followed, without accompanying explanation as to whether it represented the first 12 weeks of the scheduled permanent disability (150 weeks at $30) or something less.
Counsel for petitioner should be awarded a counsel fee based upon the total award of 177 1/2 weeks at $30 a week.
Reversed and remanded.